J-A32016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ANDREW ROBERT HESS | |
| Appellant | No. 915 EDA 2016 |

Appeal from the Judgment of Sentence September 15, 2015
in the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0002823-2014

BEFORE:  DUBOW, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY RANSOM, J.:                **FILED MARCH 01, 2017**

Appellant, Andrew Robert Hess, appeals from the judgment of sentence of life imprisonment following his conviction for murder in the first degree.[1]  We affirm.

We adopt the following statement of facts, derived from the trial court's opinion, which in turn is supported by the trial record.  **See** Trial Court Opinion (TCO), 5/11/16, at 2-15.  Appellant and the victim, Richard Parker, were close friends.  However, this friendship became strained when Appellant began an intense but short-lived relationship with Jessica Drake. Although the relationship lasted only five and one-half months, Appellant and Ms. Drake remained close friends, and Appellant believed they would

---

[1] 18 Pa.C.S. § 2502(a).

[*] Retired Senior Judge assigned to the Superior Court.

eventually resume their relationship. Instead, Ms. Drake became romantically involved with Mr. Parker. Appellant was "in denial" about the situation and furious at Mr. Parker; Mr. Parker left Appellant voicemails telling him to stay away from Ms. Drake. Appellant did not speak to Mr. Parker after Ms. Drake became involved with him.

On July 10, 2014, Ms. Drake met Appellant at his place of work and made tentative plans to meet again later that evening. They did not meet. Instead, Ms. Drake went to see Mr. Parker at the garage where he worked. Later that night, Appellant texted Ms. Drake to say that he was waiting for her, but she informed Appellant she would have to reschedule. Ms. Drake slept at the garage with Mr. Parker that evening.

On July 11, 2014, at approximately 12:30 a.m., Appellant drove to the garage. Appellant banged on the door, waking Mr. Parker and Ms. Drake. When Mr. Parker answered, an altercation ensued during which Appellant stabbed Mr. Parker multiple times. Ms. Drake ran to the door, where Mr. Parker told her that Appellant had stabbed him. He asked her to call 911 before collapsing. Appellant, standing outside the door, asked, "I'm going to jail, aren't I?"

Ms. Drake observed serious injuries to Mr. Parker's abdomen and back, and she called 911 on her cell phone. While she attempted to put pressure on Mr. Parker's wounds, Appellant left the scene but returned to help her direct emergency personnel to the location.

Police arrived at approximately 1:30 a.m. and found Mr. Parker lying on his back inside the doorway, deceased, with a large wound in his abdomen. The fatal injury was a deep stab wound to his back. Mr. Parker also suffered defensive wounds on both of his palms and his torso. Copious amounts of blood stained the ground a small distance from the body.

Appellant, who had an injured lip and blood on his face, shirt, and jeans, informed the officer he had gotten into a fight with his brother earlier that day and had gotten blood on him trying to help Mr. Parker. Appellant was taken into custody, and the twelve-inch serrated knife used in the murder was recovered from a nearby pond.

Appellant was transported to Pennsylvania State Police barracks for questioning and waived his *Miranda* rights. Appellant initially claimed he did not know what happened to Mr. Parker. He stated that Mr. Parker had already been injured when he arrived and he became covered in blood when he tried to move Mr. Parker's body. However, confronted with inconsistencies in this story, Appellant then stated that Mr. Parker had assaulted him.

Appellant, crying, claimed Mr. Parker was jealous that Appellant and Ms. Drake were trying to rekindle their romantic relationship. Appellant claimed Ms. Drake informed Appellant that Mr. Parker had raped her, although Ms. Drake later denied this. He then stated he could not believe he had stabbed his friend and killed him, and was "just trying to get him off" of

him. Following his interrogation, Appellant was arrested and charged with one count of criminal homicide.

On September 8, 2015, the matter proceeded to trial before a jury. At trial, Appellant testified in his own defense. He stated that upon driving to the garage, he was anxious because Ms. Drake had informed him that Mr. Parker felt he "might not be able to control himself around [Appellant];" he believed Mr. Parker was the stronger of the two men; and he knew Mr. Parker kept a shotgun in his garage. Appellant claimed this fear was the reason he brought a knife to the confrontation. However, Appellant also admitted that in his seven years of friendship with Mr. Parker, Appellant did not know him to be an aggressive person.

Appellant testified that upon arriving at the garage, he told Mr. Parker they needed to talk. However, Mr. Parker grabbed him from behind and began to strangle Appellant and punch him in the head. Appellant stated he was unable to escape, "very scared," and thought he was going to die. However, he also admitted that he could move and breathe. At that point, he removed the knife from his waistband and began swinging it around. Mr. Parker fell and attempted to get up. Appellant, who assumed he was trying to reach the shotgun, stabbed him in the back.

Trial concluded September 15, 2015, when the jury convicted Appellant of first degree murder. The court proceeded immediately to sentencing and imposed the mandatory sentence of life imprisonment.

Appellant timely filed a post-sentence motion challenging the weight and sufficiency of the evidence. The trial court denied Appellant's motion on February 11, 2016.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court issued a responsive opinion.

On appeal, Appellant raises the following issues for our consideration:

1. Is the Appellant entitled to a judgment of acquittal where the Commonwealth failed to present sufficient evidence to disprove his self-defense claim beyond a reasonable doubt?

2. Did the trial court commit reversible error where it refused to instruct the jury on involuntary manslaughter where (a) trial counsel requested this instruction (b) the law permits a defendant to claim both self-defense and involuntary manslaughter and (c) the evidence, including Appellant's repeated denial of any intent to kill, would have supported this verdict?

Appellant's Brief at 5.

First, Appellant claims that the evidence was insufficient to disprove his self-defense claim. *See* Appellant's Brief at 27. He argues that certain pieces of physical evidence, including a pool of blood inside the garage, a knife sheath located inside the garage, defensive injuries to the victim's palms and torso, and injuries to Appellant's body, undermined the Commonwealth's theory that Appellant stabbed the victim immediately upon entering the garage. *Id.* Accordingly, Appellant claims that the trial court erred in denying his post sentence motion for a judgment of acquittal.

- 5 -

We review a challenge to the sufficiency of the evidence as follows.

> In determining whether there was sufficient evidentiary support for a jury's finding [], the reviewing court inquires whether the proofs, considered in the light most favorable to the Commonwealth as a verdict winner, are sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. The court bears in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008) (citations omitted).

To establish a claim of self-defense, three elements must exist: 1) that the defendant reasonably believed he was in imminent danger of death or serious bodily injury, and deadly force was necessary to prevent such harm; 2) that the defendant was free from fault in provoking the situation; and 3) that the defendant did not violate a duty to retreat. *See Commonwealth v. Harris*, 703 A.2d 441, 449 (Pa. 1997). Reasonable belief has a subjective and objective component,

> [f]irst, the defendant "must have acted out of an honest, bona fide belief that he was in imminent danger," which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

*See Commonwealth v. Mouzon*, 53 A.3d 738, 752 (Pa. 2012).

With regard to a claim of self-defense, the Commonwealth bears the burden of disproving that defense beyond a reasonable doubt. **See Commonwealth v. Rivera**, 983 A.2d 1211, 1221 (Pa. 2009). This burden may not be sustained solely on the factfinder's disbelief of the defendant's testimony. **Id.**

Appellant's argument centers on certain physical evidence inside of the garage that supports his claim of self-defense. However, as noted above, the Commonwealth introduced evidence to refute this claim. Appellant arrived at the garage in the middle of the night, uninvited and after seven months of no contact with the victim. The two men were approximately the same height and weight. Mr. Parker was asleep, naked, and completely unarmed. **See** TCO, at 24-25. Appellant, on the other hand, was armed with a twelve-inch serrated hunting knife. Although Appellant testified that Mr. Parker had him in a "bear hug" and he was afraid, he also admitted that he was able to move and breathe. Appellant's own testimony regarding the sequence of events shows that Mr. Parker was unarmed, no weapon was in view, and Appellant stabbed Mr. Parker in the back as he attempted to escape.

Thus, the Commonwealth introduced sufficient evidence to disprove Appellant's claim that he was acting in an honest belief that he was in imminent danger which required the use of deadly force. **Mouzon**, 53 A.3d at 752. Accordingly, based upon the above, the evidence was sufficient for

the jury to conclude that the Commonwealth had disproved Appellant's claim of self-defense beyond a reasonable doubt. *Rivera*, 983 A.2d at 1211.

Next, Appellant claims that the trial court erred in denying his request for a jury charge on involuntary manslaughter. *See* Appellant's Brief at 28. Appellant argues that counsel timely requested this instruction, the offense was an issue in the case, and that the evidence would support such a verdict. *Id.* Accordingly, Appellant avers that the refusal to charge the jury on involuntary manslaughter constituted reversible error. *Id.*

When reviewing a challenged jury instruction, a new trial will not be granted unless the given charge was inadequate or had a tendency to mislead the jury. *See Commonwealth v. Brown*, 911 A.2d 576, 582-83 (Pa. Super. 2006). A charge is adequate unless it palpably misleads the jury or contains an omission tantamount to a fundamental error. *Id.* With regard to a requested charge,

> [A] trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict … Instructions regarding matters which are not before the court or which are not supported by the evidence serve no purpose other than to confuse the jury.

*See Commonwealth v. Patton*, 936 A.2d 1170, 1176 (Pa. Super. 2007), *aff'd,* 985 A.2d 1283 (Pa. 2009). Accordingly, an involuntary manslaughter charge is appropriate only when that crime is made an issue in the case and the evidence would reasonably support such a verdict. *See Commonwealth v. Hairston*, 84 A.3d 657, 668 (Pa. 2014). A defendant

may not claim entitlement to an instruction that has no basis in the evidence introduced at trial. *Id.*

The Crimes Code defines involuntary manslaughter as follows:

A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S. § 2504.[2]  Where the evidence does not support the inference that the death was the result of reckless or grossly negligent behavior attributable to Appellant, but instead overwhelmingly indicates that Appellant intentionally committed the crime, an involuntary manslaughter instruction is unwarranted. *See Commonwealth v. Smith*, 513 A.2d 1371, 1377-78 (Pa. 1986).

The evidence introduced at trial, as discussed above, does not support the contention that Mr. Parker's death was a result of Appellant's negligent or reckless actions.  Instead, the evidence showed that Appellant

_____

[2] In context of the Crimes Code, "reckless" conduct is the conscious disregard of a substantial and unjustifiable risk that the material element of the offense will result from the conduct.  18 Pa.C.S. § 302(b)(3).  A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct.  18 Pa.C.S. § 302(b)(4).  In both cases, the risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.  18 Pa.C.S. § 302(b)(3), (4).

deliberately initiated a confrontation and stabbed Mr. Parker in the back, resulting in his death. Accordingly, the trial court did not err in refusing to charge the jury with involuntary manslaughter. **See Brown**, 911 A.2d at 582-83.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/1/2017