J-S53018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DEZRE SMITH, | |
| Appellant | No. 2016 WDA 2013 |

Appeal from the Judgment of Sentence of July 9, 2013
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0003815-2012

BEFORE:  DONOHUE, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:　　　　　　　　**FILED SEPTEMBER 25, 2014**

Appellant, Dezre Smith, appeals from the judgment of sentence entered on July 9, 2013 in the Criminal Division of the Court of Common Pleas of Allegheny County, as made final by the denial of post-sentence motions on November 25, 2013.  We affirm.

At the conclusion of trial on April 11, 2013, a jury found Appellant guilty of one count each of attempted homicide,[1] aggravated assault,[2] robbery,[3] burglary,[4] firearms not to be carried without a license,[5] recklessly

_____

[1] 18 Pa.C.S.A. § 901(a).

[2] 18 Pa.C.S.A. § 2702(a)(1).

[3] 18 Pa.C.S.A. § 3701(a)(1)(ii).

[4] 18 Pa.C.S.A. § 3502(c)(1).

*Retired Senior Judge assigned to the Superior Court.

endangering another person,[6] and conspiracy to commit criminal homicide.[7]

On July 9, 2013, Appellant received an aggregate sentence of 180 to 360 months' incarceration.

The trial court summarized the facts of this case as follows:

The charges in this case arose out of two separate home invasion robberies. The victim, Timothy Anderson[,] testified that[,] on July 24, 2011[,] an individual wearing a mask and carrying a silver revolver entered the basement of his home. The individual pointed the gun at him and, briefly, at his fiancée, Shannon Vargo. The [individual] then walked over [to Anderson's] desk, removed cash he had there and then left. [Although] Anderson followed a few seconds later, he did not see where the robber fled. Throughout the robbery, Anderson was only able to see the [individual's] eyes. He did not recognize him.

Approximately six (6) weeks later, on September 12, 2011, Anderson was once again in his basement when two men entered, one of them holding a silver revolver identical to the one brandished by the robber on July 24, 2011. That individual had the same mask covering his face as did the person who robbed [Anderson] in July. There was another individual who was not armed but who also had his face covered with a mask. Once again, the robber headed straight for Anderson's desk. Anderson grabbed for the gun. As they struggled, the robber discharged the weapon, slightly grazing Anderson's leg. The struggle over the gun continued and the mask slipped down to [the] robber's mouth and Anderson was able to see his face from a distance of a few inches for a couple of seconds. The robber was able, however, to fire the weapon two more times, striking

_(Footnote Continued)_ _____

[5] 18 Pa.C.S.A. § 6106(a)(1).

[6] 18 Pa.C.S.A. § 2705.

[7] 18 Pa.C.S.A. § 903(c).

Anderson in the chest and abdomen, causing him to let go of the weapon. The assailant and his accomplice then fled.

As a result of his injuries, [Anderson] was hospitalized for more than three months. He was in a coma and/or unconscious from the date of the incident through shortly before Thanksgiving. When he awoke from his coma, [] Vargo showed him a photograph of [Appellant] she had taken from [his] Facebook page. She had apparently heard rumors on the street that [Appellant] was involved in this incident and secured the photograph to show to Anderson. She testified that she showed [Anderson] the photograph and asked, "Do you know who this is?" Anderson responded, "That's the man who shot me." This information was relayed to the police who, approximately a week later, came to [Anderson's] hospital [room] and showed him a photographic array of eight (8) individuals, one of whom was [Appellant]. [Anderson] immediately pointed to [Appellant] and stated that he was the person who had robbed him.

Anderson admitted that he sold marijuana from his home. He said that he kept the marijuana and his cash in the desk drawer in the basement. He testified that he sold marijuana from his home to Matt Potter on several occasions. Potter was present in his basement and saw him go to the desk, put the money in it and then retrieve the marijuana.

Anderson related that Potter had called him on July 23, 2012, the day before the first robbery, and asked if Anderson could get him a quarter pound of marijuana. Anderson told him that he would not be available that night but would call him later and tell him when he could pick up the marijuana. Later that night, [Anderson] called Potter and left a voice mail. Potter called him the next day, the 24th, and said that he wanted to buy an ounce and Anderson told him it would cost one hundred and twenty dollars. Potter never showed up to buy the marijuana.

After [Appellant] was identified by Anderson, police obtained a warrant for his residence. While executing that warrant, they learned that [] Potter was [Appellant's] roommate and that they had known each other for years. Potter also admitted to the officers that he had purchased marijuana from Anderson on several occasions, including in July 2011.

- 3 -

[Appellant] testified himself and denied any involvement in either robbery. He claimed that on September 12, 2011 he was with [] Potter in the afternoon into the evening and then coaching a youth football team that night. He also presented *alibi* evidence. George Hazaga, who coached that football team with [Appellant], testified that football practice began between 5:00 p.m. or 6:00 p.m. [O]n September 12, 2011, practice began at approximately 5[:00 p.m.] It lasted approximately two (2) hours. After practice, Hazaga, [Appellant], Hazaga's son, another individual by the name of Eric and his son stayed at the field until approximately 9:00 p.m., cleaning and organizing equipment. Hazaga testified that he agreed to give [Appellant] a ride home and that they left the field in White Oak Borough at approximately 9:00 p.m., arriving at the defendant's McKeesport residence at around 9:15 p.m. When [Appellant] realized he did not have a key, they stayed with him and talked in the car for between fifteen (15) and twenty (20) minutes. After [Appellant] left [the] vehicle, Hazaga left the area. Hazaga also testified that when he was interviewed by the detectives, he mentioned another night when [Appellant] was present with him and the teen attending a bonfire. He said, however, that this did not take place on September 12th.

[Appellant] also called Eric Jenkins, who was a landscaper [and Appellant's employer.] Jenkins said that on September 12th, he was with his mother for dinner at approximately 6:00 p.m. and stayed there until approximately 9:15 p.m. He arrived back at his mother's house between 9:30 p.m. and 10:00 p.m. He said that when he pulled up to her house, [Appellant], George Hazaga and George's son, were sitting in a red minivan outside his mother's home. [Appellant] was living in an apartment at Jenkins' mother's residence and [he] explained to Jenkins that he had not been able to get in because the door was locked. They let [Appellant] into the apartment.

The [Commonwealth charged Appellant with various offenses arising out of the two] home invasion robberies which occurred on July 24, 2011 and September 12, 2011. For the July 24 incident, he was charged with one count each of [r]obbery, [b]urglary, [c]arrying a [c]oncealed [w]eapon; [t]heft, [c]riminal [c]onspiracy; and Violation of Uniform Firearms Act – [person n]ot to [p]ossess [f]irearm. In connection with the September 12 incident, he was charged with one count each of [c]riminal [a]ttempt – [h]omicide; [a]ggravated [a]ssault; [r]obbery;

- 4 -

[b]urglary; Violation of Uniform Firearms Act – [c]arrying a [f]irearm [w]ithout a [l]icense; [r]eckless [e]ndangerment; [c]riminal [c]onspiracy; and Violation of the Uniform Firearms Act – [person n]ot to [posses] a [f]irearm.[] [Appellant waived his right to a jury trial as to the persons not to possess a firearm charges and agreed to allow the court to decide those charges.]

At the conclusion of the trial, the jury acquitted [Appellant] of all charges related to the July 24, 2011 incident, but found him guilty of the remaining charges. The [c]ourt acquitted [Appellant] of the two [persons not to possess a firearm] charges. [Appellant] filed a written [p]ost[-t]rial [m]otion arguing that the verdict was against the weight of the evidence. This [m]otion was denied. At sentencing, [Appellant] made an oral [m]otion for [e]xtraordinary [r]elief, once again challenging the weight and sufficiency of the evidence. This [m]otion was likewise denied. The [trial c]ourt then sentenced [Appellant] to [] an aggregate sentence of 180 to 360 months [in prison].

[Appellant] filed a [timely n]otice of [a]ppeal and, pursuant to [court o]rder, a [concise s]tatement of [e]rrors [c]omplained of on [a]ppeal. [This appeal followed.]

Trial Court Opinion, 3/27/14, at 1-8 (footnote omitted).

Appellant raises the following claims for our consideration:

Was the identification evidence insufficient beyond a reasonable doubt when the victim, who was under the influence of drugs and had just been shot, made an identification based on briefly viewing part of the perpetrator's face as they fought over a gun?

Did the trial court abuse its discretion in finding that the verdict was not against the weight of the evidence since [Appellant] had an alibi that was supported by multiple witnesses and the only evidence connecting the defendant to this crime was the victim's questionable identification?

Appellant's Brief at 6.

In his first claim, Appellant challenges the sufficiency of the evidence introduced by the Commonwealth to establish that he committed the

offenses with which he was charged. Specifically, Appellant argues that Anderson's testimony was the only evidence offered to connect him to the charges in this case and that Anderson's testimony was legally insufficient because he was under the influence of drugs, had just been shot, and had only a brief opportunity to view the assailant when the two fought over a gun. Appellant notes the lack of physical evidence (*e.g.* a gun, bandana, or clothing) and DNA that connected him to the charged offenses. Appellant also alleges that Anderson's testimony was insufficient to prove his involvement beyond a reasonable doubt given the testimony that supported Appellant's *alibi* defense. This claim merits no relief.

We review Appellant's sufficiency challenge under a familiar standard and scope of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Karns*, 50 A.3d 158, 161 (Pa. Super. 2012) (case

citation omitted), *appeal denied*, 65 A.3d 413 (Pa. 2013).

Within the context of a weight of the evidence claim raised in

Appellant's concise statement, the trial court rejected Appellant's challenge

to the identification evidence put forward by the Commonwealth. The trial

court stated:

> [Anderson] had an opportunity to see [Appellant's] face, up close during the robbery. He was shown a photograph when he awoke from his coma and was asked simply if he knew who it was. He responded, without any prompting, according to the evidence presented, that it was the man who shot him. That testimony, standing alone, was sufficient to support this verdict. [Appellant's involvement] was corroborated through the circumstantial evidence that placed his roommate in [Anderson's] home shortly before the robbery [and credited the roommate with knowledge about where Anderson kept his money.] The fact that [Appellant] was able to go straight to where the money was kept is circumstantial evidence that someone he knew had been there and [saw Anderson] access money from the desk.
>
> [Appellant's] *alibi* evidence was not such that [it] rendered the verdicts [unfounded]. His *alibi* was not one that made it impossible for him to have committed these crimes. The recollections of time were, understandably, vague. At best, the *alibi* evidence placed [Appellant] with others up until approximately 9:45 p.m. on the night that the robbery occurred. The evidence also established that the distance between [Appellant's] and [Anderson's] homes was not so far that he could not have driven to [Anderson's] home and committed the robbery after George Hazaga and Eric Jenkins had left. [Anderson's] testimony as to when the robbery occurred placed it somewhere around 10:00 p.m. In light of the eyewitness identification by the victim, the corroboration offered by the circumstantial evidence showing that [Appellant's] roommate would have known where [Anderson] kept his money and marijuana, coupled with the weakness of [Appellant's] *alibi*,

certainly means that this verdict [was supported by sufficient evidence].

Trial Court Opinion, 3/27/14, at 11-12.

For the reasons expressed by the trial court, we conclude that the Commonwealth's identification evidence was not so weak and inconclusive that, as a matter of law, no probability of fact could be drawn from the combined circumstances. Hence, Appellant is not entitled to relief on his sufficiency challenge.

In his second claim, Appellant asserts that the trial court abused its discretion in denying his request for a new trial on grounds that the verdict was against the weight of the evidence.[8] In developing this claim, Appellant again targets the Commonwealth's evidence that he committed the charged offenses and repeats many of the allegations leveled in support of his sufficiency challenge. Appellant claims that Anderson's testimony was vague, uncertain, and insufficient to rebut Appellant's *alibi*. This claim, too, merits no relief.

When reviewing a challenge to the weight of the evidence, our standard of review is well established:

> [A] verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. It is well established that a weight of the

_____

[8] Appellant properly preserved his challenge to the weight of the evidence by raising his claim before the trial court in a post-sentence motion. **See** Pa.R.Crim.P. 607(A).

evidence claim is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

Significantly, in a challenge to the weight of the evidence, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. It is for this reason that the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

***Commonwealth v. Rivera***, 983 A.2d 1211, 1225 (Pa. 2009) (internal quotations and case citations omitted). Although an appellate court confronted by a weight of the evidence claim owes considerable deference to the determinations of the trial court, such deference is not limitless. As our Supreme Court has explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable

or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

**Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (case citations omitted).

In this case, the court rejected Appellant's request for a new trial predicated upon the contention that the verdict was against the weight of the evidence. The court based its decision on the reasons set forth above, as well as other determinations articulated in its opinion. Our review of the record confirms that the trial court properly exercised its discretion and that the verdict was not so contrary to the evidence as to shock one's sense of justice. For these reasons, we conclude that no relief is due on Appellant's weight of the evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/25/2014