J-S49003-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER ADAMS, | |
| Appellant | No. 1538 EDA 2012 |

Appeal from the Judgment of Sentence of April 27, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004313-2009

BEFORE:  OLSON, OTT and STABILE, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 08, 2014**

Appellant, Christopher Adams, appeals from the judgment of sentence entered on April 27, 2012 in the Criminal Division of the Court of Common Pleas of Philadelphia County, as made final by the denial of post-sentence motions on August 17, 2012.  We affirm.

At the conclusion of trial on April 27, 2012, a jury found Appellant guilty of first-degree murder, 18 Pa.C.S.A. § 2502(a).  Immediately thereafter, the trial court imposed the mandatory sentence of life in prison, 18 Pa.C.S.A. § 1102(a)(1).

The trial court summarized the historical facts as follows:

At trial, the Commonwealth presented the testimony of Jeffrey Williams, Kenyon Childs, James Johnson, Dr. Gary Lincoln Collins, Philadelphia Police Officers Stacey Wilkins, Jacqueline Davis, and Edward Nelsons, and Philadelphia Police Detective Joseph Centeno and George Pirrone.  [Appellant] presented the testimony of Madeline Nixon.  Viewed in the light most favorable

to the Commonwealth as the verdict winner, their testimony established the following.

On July 22, 2008, at approximately 7[:00 p.m.], [Appellant] was talking with a friend, Kenyon Childs, on the 2000 block of Opal Street in Philadelphia. [Appellant] told Mr. Childs that [Appellant] was having a problem with another man, Korey Anderson. [Appellant] said that [Mr. Anderson's friend] shot one of [Appellant's] friends, and that [Appellant] was going to "deal with" Mr. Anderson. [Appellant] and Mr. Childs then parted ways, and Mr. Childs went to his girlfriend's house on 20th Street.

At the same time, [Mr.] Anderson was sitting in a chair on the corner of Boston Street and 20th Street, near the home of Mr. Child's girlfriend. Two other men, James Johnson and Jeffrey Williams, were standing nearby. [Appellant] then approached the corner, walked directly toward Mr. Anderson, and shot him in the head. Mr. Anderson fell to the ground, and [Appellant] stood over him and continued to shoot him repeatedly. [Appellant] then fled, running up 20th Street.

Mr. Childs heard the gunshots from his girlfriend's house. He then ran to the corner of Boston Street and 20th Street, and saw Mr. Anderson lying on the ground. Approximately five minutes had passed since [Appellant] had told Mr. Childs that he was going to "deal with" Mr. Anderson.

Mr. Anderson was transported to Temple University Hospital, where he was pronounced dead. He had been shot four times: twice in the chest, once in the back, and once in the head. Mr. Anderson's cause of death was multiple gunshot wounds. The medical examiner recovered three .38 caliber bullets from [Mr.] Anderson's body. Police recovered one .38 caliber bullet from the crime scene.

Later that night, Mr. Childs saw [Appellant] on the street and talked to him about Mr. Anderson's murder. [Appellant] said "f**k him," and told Mr. Childs that he had shot Mr. Anderson. [Appellant] was arrested twelve days later.

Trial Court Opinion, 11/14/13, at 2-3 (record citations and footnotes omitted).[1]

Appellant raises the following claims for our review:

Was the evidence insufficient to support a conviction in this case because there was no in[-]court identification [of Appellant] and the out[-]of[-]court statements were not credible?

Was the verdict against the weight of the evidence because there was no in[-]court [testimony made by witnesses placed under oath] that identified Appellant as the shooter?

Did witness Jeffrey Williams fail to make a proper in[-]court identification; and was the in[-]court testimony of Kenyon Childs and James Johnson inconsistent with their prior statements?

Was the verdict inconsistent because of the lack of physical, forensic/DNA, or medical evidence?

Did the trial court err [in] preventing defense counsel from asking Detective Pirrone about information received at the scene shortly after the shooting about a prior shooting at the same location, the day before, without an objection?

Did the District Attorney commit prosecutorial misconduct by making prejudicial, misleading, and inflammatory statements to the jury?

Appellant's Brief at 1-2.[2]

Appellant's first claim asserts that the evidence admitted at trial was insufficient to establish, beyond a reasonable doubt, that he shot and killed

_____

[1] Both Appellant and the trial court have complied with the requirements of Pa.R.A.P. 1925.

[2] We have re-ordered Appellant's issues to facilitate a more logical and cohesive discussion of the issues.

Mr. Anderson. Specifically, Appellant asserts that no witness called on behalf of the Commonwealth identified Appellant as the shooter at trial. Appellant also points out that the only evidence implicating him in Mr. Anderson's killing was the testimony of Mr. Childs, where Mr. Childs stated that Appellant admitted to killing Mr. Anderson.

We review Appellant's sufficiency challenge under a familiar standard and scope of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Karns*, 50 A.3d 158, 161 (Pa. Super. 2012) (case citation omitted), *appeal denied*, 65 A.3d 413 (Pa. 2013).

As the trial court concluded, there was substantial and compelling evidence from which reasonable jurors could find that Appellant fatally shot Mr. Anderson with the specific intent to kill.[3]  As the trial court observed, the police statements of three witnesses furnished solid support for a finding that Appellant committed the murder *sub judice*.  **See** Trial Court Opinion, 11/14/13, at 5 (noting Mr. Childs' police statement that, approximately five minutes before the murder, Appellant said he was going to "deal with" Mr. Anderson and recalling police statements by Messrs. Johnson and Williams that they saw Appellant walk directly up to Mr. Anderson and shoot him in the head and continue to shoot him as he was lying on the ground).[4]  Although these witnesses recanted their identification testimony at trial, their statements to the police were admissible as prior inconsistent statements because they were signed and adopted by the declarants.  **See** Pa.R.E. 803.1(1)(B).  Such "[p]rior inconsistent statements, which meet the requirements for admissibility under Pennsylvania law must . . . be considered by a reviewing court in the same manner as any other type of

---

[3] We shall dispense with a recitation of the elements of first-degree murder since Appellant's sufficiency challenge focuses exclusively upon proof of his involvement with Mr. Anderson's shooting death.

[4] Mr. Johnson testified at Appellant's first trial (which resulted in a hung jury) but was unavailable to testify at Appellant's present trial.  Pursuant to Pa.R.E. 804(b)(1)(A), his testimony from Appellant's first trial was read into the record at the present trial.  Mr. Johnson's prior testimony disavowed the portion of his statement to police in which he identified Appellant as the gunman.

validly admitted evidence when determining if sufficient evidence exists to sustain a criminal conviction." ***Commonwealth v. Brown***, 52 A.3d 1139, 1171 (Pa. 2012) (footnote omitted) (witness' out-of-court statements, which were recanted at trial, furnished legally sufficient evidence to sustain first-degree murder conviction where statements were reduced to writing, each witness signed his statement, each witness was cross examined at trial, and statements were fundamentally consistent with one another such that statements were not patently unreliable).  Appellant's first-degree murder conviction finds sufficient evidentiary support in the record; hence, Appellant is not entitled to relief on his first claim.

Appellant's second claim raising the weight of the evidence identifies the same contentions advanced in support of Appellant's sufficiency challenge.  When reviewing a challenge to the weight of the evidence, our standard of review is well established:

> [A] verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice.  It is well established that a weight of the evidence claim is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.  Rather, the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice.  A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

Significantly, in a challenge to the weight of the evidence, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. It is for this reason that the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

***Commonwealth v. Rivera***, 983 A.2d 1211, 1225 (Pa. 2009) (internal quotations and case citations omitted). Although an appellate court confronted by a weight of the evidence claim owes considerable deference to the determinations of the trial court, such deference is not limitless. As our Supreme Court has explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (case citations omitted).

Relying upon its sufficiency analysis, the trial court here determined that the jury's verdict was fully consistent with the evidence. After careful review, we agree. Because we find no abuse of discretion in the trial court's

refusal to grant Appellant a new trial, we conclude that Appellant's second claim merits no relief.

Appellant's third claim requests a new trial based upon the lack of in-court identification testimony offered by Messrs. Williams, Childs, and Johnson. For the reasons set forth above, we deny relief on this claim.

Appellant's fourth claim alleges that he is entitled to a new trial because there "was no physical, forensic/DNA, or medical evidence connecting Appellant to [Mr. Anderson's killing], therefore rendering an inconsistent verdict." Appellant's Brief at 6. Appellant does not characterize this claim as either a sufficiency challenge or a claim alleging that the verdict was against the weight of the evidence. As such, Appellant does not address the merits of his fourth claim under an appropriate standard of review. For this reason alone, this claim is arguably waived. *See* Pa.R.A.P. 2119(a) (argument section of brief shall include discussion and citation of pertinent authorities). Even if we were to forgo waiver and consider this claim as a challenge to the weight or sufficiency of the evidence, we would deny relief for the reasons offered above.

In his fifth claim, Appellant alleges that he should have been permitted to cross-examine Detective Pirrone about a statement given by Madline Nixon regarding a shooting that occurred prior to the killing in this case. Appellant points to the following exchange that took place at trial:

[Defense Counsel]: You talked to Miss Madline Nixon?
[Detective Pirrone]: The name sounds familiar.

- 8 -

[Defense Counsel]:  Would it be fair to say that you talked to her on July [23rd], 2008, if you recall?
[Detective Pirrone]:  Yes.
[Defense counsel]:  You took a statement from her?
[Detective Pirrone]:  I believe we did, yes.
[Defense Counsel]:  As a result of talking to [Miss] Nixon, did you learn about a prior shooting?
[Detective Pirrone]:  Can I review the statement?
[Defense Counsel]:  Sure.
[Detective Pirrone]:  Can I see the statement?
[Trial Court]:  Do you have an objection to that, what he learned from [Miss] Nixon?
[Assistant District Attorney]:  Yes, Your Honor.
[Trial Court]:  Sustained.

N.T., 4/25/12, at 202-203.

Based upon the foregoing exchange, Appellant asserts that the Commonwealth did not object to Detective Pirrone's testimony until prompted to do so by the trial court.  Appellant reasons that this constituted a failure to object on the part of the Commonwealth.  Moreover, this failure waived the Commonwealth's opposition to the admissibility or use of the challenged evidence.  Appellant concludes that the trial court's error in prompting the Commonwealth to object precluded defense counsel from admitting Detective Pirrone's statement which, in turn, removed relevant evidence from the jury's consideration.

This claim merits no relief.  "A trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion." **Commonwealth v. Huggins**, 68 A.3d 962, 966 (Pa. super. 2013), *appeal denied*, 80 A.3d 775 (Pa. 2013).

As the trial court observed, the Commonwealth clearly objected to Detective Pirrone's testimony regarding Miss Nixon's out-of-court statement. **See** Trial Court Opinion, 11/14/13, at 8. Thereafter, defense counsel did not cite any exception to the rule against hearsay under which the testimony could have been admitted. Since the trial court correctly sustained the objection because Miss Nixon's statement constituted hearsay that was not subject to any exception, **see** Pa.R.E. 801-803, we discern no error or abuse of discretion.

Appellant's claim seems to suggest that the Commonwealth's failure to challenge Detective Pirrone's testimony prior to interjection by the trial court somehow defeated the validity or legal effect of the Commonwealth's objection. Appellant, however, cites no authority to support this contention and our own efforts have uncovered none. We decline to read waiver into these circumstances. Moreover, even if the trial court erred in prompting an objection by the Commonwealth, we see no proof of how such an error prejudiced Appellant given the quantum of compelling evidence introduced against him.[5] **See Commonwealth v. Chmiel**, 889 A.2d 501, 528 (Pa. 2005) (retrial not warranted were appellate court concludes beyond a

---

[5] Beyond the bald contention that "[the trial court's] error took away the jury's ability to assess relevant evidence," Appellant's Brief at 10, Appellant has not developed a claim that he sustained harm as a result of the trial court's evidentiary procedure.

- 10 -

reasonable doubt that evidentiary error could not have contributed to verdict).

Appellant's sixth and final claim alleges that the district attorney committed prosecutorial misconduct by making prejudicial, misleading, and inflammatory statements to the jury during his closing argument. In particular, Appellant points out that the prosecutor told the jury that Appellant bragged about Mr. Anderson's killing, that three Commonwealth witnesses faced intimidation and retaliation for testifying against Appellant, and that a video was not helpful to either party. Appellant alleges that these comments were intended to form a fixed and hostile bias against him in the minds of the jury.

After reviewing record, the trial court determined that Appellant did not object to any portion of the Commonwealth's closing argument. *See* Trial Court Opinion, 11/14/13, at 9, *citing* N.T. 4/26/12, at 85-115. Our examination of the trial transcript confirms this assessment. Hence, Appellant's prosecutorial misconduct claim is waived and no relief is due. Pa.R.A.P. 302(a) (issues not raised in the trial court are waived and cannot be raised for the first time on appeal).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary


Date: 10/8/2014