J-S17011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HAKIM BLATCH, | |
| Appellant | No. 916 EDA 2016 |

Appeal from the Judgment of Sentence of February 17, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007790-2014
and CP-51-CR-0007792-2014

BEFORE: OLSON, STABILE AND MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.: **FILED APRIL 12, 2017**

Appellant, Hakim Blatch, appeals from the judgment of sentence entered on February 17, 2016. We affirm.

The trial court ably summarized the underlying facts of this case. As the trial court explained:

> In early January[] 2014, [R.M.] was working as a pizza delivery driver. At some point in early January 2014, [R.M.] was driving his vehicle when he noticed a woman, later identified as Kimberly Cook, walking down the street near 54th Street and Lansdown Avenue in Philadelphia. [R.M.] honked his horn at Cook and pulled over his vehicle to talk with her, hoping to exchange phone numbers and meet with her later. At this time, Cook identified herself as "Zah."[fn.1] While [R.M.] and Cook were talking and exchanging phone numbers, Cook noticed that [R.M.] had an amount of U.S. currency on the passenger side floor of his vehicle.
>
> [fn.1] Cook was also identified as "Zamirah Johnson."

After meeting [R.M.], Cook told [Appellant], her boyfriend, about the meeting and asked [Appellant] to rob [R.M.]. [Appellant] agreed and arranged to have co-defendants Quadir Jeffries and Alonzo Wallace aid in the robbery. The plan was for Cook to accompany [R.M.] to his house, while [Appellant], Wallace, and Jeffries followed in a separate car. Cook would then open the door for [Appellant], Wallace[,] and Jeffries to enter and rob [R.M.].

On January 18, 2014, Cook called [R.M.] under the false pretense of meeting [R.M.] to have sex. Cook arranged to have [R.M.] pick her up near 56th Street and Lansdown Avenue later that evening. Cook, [Appellant], Wallace, and Jeffries then headed to 56th Street and Lansdown Avenue in Jeffries' car. Also with them was Cook's friend, Crystal Collins. Cook wished to have Collins present with her, as Cook did not know [R.M.] and was nervous about meeting him alone. [Appellant], Jeffries, and Wallace waited in Jeffries' car around the corner from where [R.M.] was waiting while Cook and Collins exited the vehicle and met with [R.M.].

[R.M.] arrived at the corner of 56th Street and Lansdown Ave[nue] and waited for approximately 45 minutes before Cook arrived, accompanied by Collins. [R.M.] had both women get into his car and drove to his apartment on the 4200 block of North 7th Street in Philadelphia. While [R.M.] was driving, Cook was texting [Appellant], providing directions as to where [R.M.] was driving and the address at which they stopped.

Upon arriving at [R.M.'s] apartment, [R.M.], Cook, and Collins went inside and had a conversation about sex. While they were talking, [Appellant], Jeffries, and Wallace arrived at [R.M.'s] apartment, finding the outside door locked, and [Appellant] texted Cook to tell her to open the door. At this time, Cook asked if she could go outside to smoke a cigarette, and [R.M.] gave her the keys to his car, telling her that he had a lighter inside of it. Cook then went downstairs and opened the door for Jeffries and Wallace to enter the building and directed them to [R.M.'s] bedroom. Jeffries and Wallace entered the building and went upstairs while Cook went to the street corner, throwing away

[R.M.'s] keys, where she was later joined by Collins. As Collins left the building, [Appellant] entered.

After letting Cook out of the apartment and watching her go down the steps, [R.M.] closed his door, only to reopen it and see men rushing up the steps. [R.M.] attempted to close his door, but Jeffries and Wallace kicked the door in, forcing [R.M.] to the ground. While [R.M.] was on the ground, Jeffries and Wallace pistol whipped him with handguns while demanding that [R.M.] tell them where the money was, and threatening to shoot him. [Appellant] joined Jeffries and Wallace while they were beating [R.M.]. The assailants rummaged through [R.M.'s] room looking for cash, and found a cookie tin with marijuana and cash. They failed to find the large sum of cash that was in [R.M.'s] pocket.

[M.S.], who lived in the apartment across from [R.M.], heard the commotion and opened his door to see what was happening. [M.S.] saw two men standing in [R.M.'s] broken doorway. Wallace, noticing [M.S.] open the door, turned towards [M.S.] and shot at him. Closing the door as Wallace turned, [M.S.] ducked and was shot through the door, with the bullet striking his left arm. Had [M.S.] not ducked, the bullet would have struck [M.S.] in his heart. As the three robbers left the apartment building, Jeffries fired a shot at a security camera inside the front door.

Hearing the assailants leave, [R.M.] checked on [M.S.] while [M.S.] called the police. Police responded and were let into the house by [R.M.]. [M.S.] and [R.M.] were transported to Temple University Hospital for medical treatment.

Police recovered one [nine-millimeter] fired cartridge case and one [40 caliber] fired cartridge case from the first floor hallway of the home. Police also recovered the video tapes of the home surveillance system that covered the front entryway into the building. The inside camera appeared to be damaged by a gunshot. After his release from the hospital, [M.S.] found the [40 caliber] bullet that had struck him in his room and gave that bullet to the landlord, who turned it over to police.

Later [on the night of the shooting], [Appellant], Cook, Collins, Wallace, and Jeffries all met at a speakeasy on Jackson and Taney Streets. While the group was together, they discussed Wallace shooting [M.S.] and Jeffries shooting out the camera. At this time, [Appellant] stated that Wallace and Jeffries had already pistol-whipped [R.M.] by the time [Appellant] got upstairs. Jeffries gave Collins some money at the speakeasy while [Appellant] gave Cook some marijuana.

Police provided the media with a copy of the surveillance video, in an effort to get public help in identifying the robbers. Deputy Sheriff Martin Samuels, who knew both [Appellant] and Jeffries from his time patrolling the area, watched the video of the assault and identified [Appellant] and Jeffries as two of the perpetrators. Police also conducted an analysis of the phone [R.M.] had used to contact Cook, and from that, were able to identify Cook as a suspect in the case. Police put Cook's photo in a photo array and showed it to [R.M.], who identified Cook as the person he stopped on the street and who set him up for the robbery.

Jeffries was arrested on February 23, 2014. Police made several efforts to locate [Appellant] and Cook in February and March 2014, but were unable to locate them. [Appellant] and Cook were arrested on June 4, 2014. Wallace was arrested on June 11, 2014. After her arrest, Cook provided a statement to police, detailing her involvement in the robbery. Cook also identified [Appellant], Wallace, and Jeffries to police. A cell phone tower analysis of the location of [Appellant's] cell phone on the night of the robbery corroborated Cook's statement to the police regarding the events surrounding the robbery.

Trial Court Opinion, 6/15/16, at 2-7 (internal citations and some internal footnotes omitted).

At docket number CP-51-CR-0007792-2014 (hereinafter "docket number 7792"), the Commonwealth charged Appellant with a number of crimes, including aggravated assault against R.M., robbery, and burglary.[1] At docket number CP-51-CR-0007790-2014 (hereinafter "docket number 7790"), the Commonwealth charged Appellant with crimes including attempted murder against M.S., aggravated assault against M.S., criminal conspiracy, and firearms not to be carried without a license.[2] Following trial, the jury found Appellant guilty of aggravated assault, robbery, and burglary at docket number 7792 and aggravated assault, criminal conspiracy, and firearms not to be carried without a license at docket number 7790. The jury found Appellant not guilty of attempted murder at the latter docket number. On February 17, 2016, the trial court sentenced Appellant to serve an aggregate term of 23 to 46 years in prison for the above convictions.

On February 23, 2016, Appellant filed a timely post-sentence motion at docket number 7792. Appellant did not file a post-sentence motion at docket number 7790.[3] Even though Appellant did not file a post-sentence motion at docket number 7790, within Appellant's post-sentence motion filed

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 3701(a)(1)(ii), and 3502(a)(1), respectively.

[2] 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), 903, and 6106(a)(1), respectively.

[3] Further, we note that Appellant's post-sentence motion only listed docket number 7792 in the caption. *See* Appellant's Post-Sentence Motion at Docket Number 7792, 2/25/16, at 1.

at docket number 7792, Appellant raised a number of claims that were only relevant to his convictions at docket number 7790, including claims that his convictions for possessing a firearm and criminal conspiracy were against the weight of the evidence.  Appellant's Post-Sentence Motion at Docket Number 7792, 2/25/16, at 1-2.  The trial court denied Appellant's post-sentence motion on April 4, 2016 and Appellant filed timely notices of appeal at both docket numbers.  Appellant raises two claims on appeal:

> 1. Whether the verdict is against the weight of the credible evidence where there is insufficient evidence to establish that [Appellant] possessed a firearm during the commission of the alleged crime[?]

> 2. Whether the verdict is against the weight of the evidence where the evidence does not support a verdict of guilt on the charge of conspiracy[?]

Appellant's Brief at 4.

Appellant's claims are meritless.

An appellant must preserve his weight of the evidence claim by raising the claim before the trial court.  *Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009); Pa.R.Crim.P. 607(A).  One may not challenge the weight of the evidence for the first time on appeal.  *Sherwood*, 982 A.2d at 494.  As the *Sherwood* Court declared:

> A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion.  The purpose of this rule is to make it clear that a challenge to the weight

> of the evidence must be raised with the trial judge or it will
> be waived.

*Id.* at 494 n.22 (internal quotations and citations omitted).

Both of Appellant's claims challenge the weight of the evidence surrounding his convictions at docket number 7790. However, Appellant did not file a post-sentence motion at docket number 7790. Further, Appellant did not orally challenge the weight of the evidence to the trial court. Therefore, it is probable that Appellant has waived his current weight of the evidence claims. *C.f.* Pa.R.A.P. 341 note ("[w]here [] one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed. *Commonwealth v. C.M.K.*, 932 A.2d 111, 113 and n.3 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 of two persons' judgments of sentence)").

Since Appellant did not raise the issues regarding his convictions at docket number 7790 in the post-sentence motion filed at docket number 7792, we will not decide the case based upon waiver. However, even if Appellant preserved his weight of the evidence claims, the claims are meritless. Our Supreme Court has held:

> a verdict is against the weight of the evidence only when
> the jury's verdict is so contrary to the evidence as to shock
> one's sense of justice. It is well established that a weight of
> the evidence claim is addressed to the discretion of the trial
> court. A new trial should not be granted because of a mere
> conflict in the testimony or because the judge on the same
> facts would have arrived at a different conclusion. Rather,
> the role of the trial court is to determine that

notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

Significantly, in a challenge to the weight of the evidence, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. It is for this reason that the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009) (internal quotations and citations omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Serrano*, 61 A.3d 279, 290 (Pa. Super. 2013) (internal quotations and citations omitted).

According to Appellant, his conviction for possession of a firearm was against the weight of the evidence because "Appellant was not seen with a firearm or any type or bulge under his clothes" and his conviction for

criminal conspiracy was against the weight of the evidence because the consolidated assault, robbery, and burglary "just kind of happened."[4] Appellant's Brief at 12 and 16. Both claims fail. As the trial court explained, Appellant's conviction for possession of a firearm was not against the weight of the evidence:

> At trial, [R.M.] testified that, while being beaten by his assailants, he "saw two [guns], but [he was] sure it was three." [N.T. Trial, 12/3/15,] at 220. Since there were only three assailants, including [Appellant], and [R.M.] was certain that he was being beaten with three guns, a reasonable juror had an adequate basis for concluding that all three assailants were armed with guns. Moreover, [R.M.'s] conclusion that all three assailants were armed was not contradicted and was unchallenged at trial. In particular, none of the three [defense] attorneys asked [R.M.] any questions at all regarding his conclusion about the presence of three guns. Accordingly, the guilty verdict on the firearms charge does not shock [the trial c]ourt's sense of justice, and no relief is due.

Trial Court Opinion, 6/15/16, at 8 (internal footnote and some internal citations omitted).

Further, the trial court explained, Appellant's conviction for criminal conspiracy was not against the weight of the evidence:

_____

[4] Within the argument section of Appellant's brief, Appellant seemingly confuses the concepts of weight of the evidence and sufficiency of the evidence. See Appellant's Brief at 10-17. However, since Appellant's Pennsylvania Rule of Appellate Procedure 1925(b) statement only preserved weight of the evidence challenges, Appellant waived any claim that the evidence was insufficient to support the verdicts. **See** Appellant's Rule 1925(b) Statement, 4/25/16, at 1-2; Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the [Rule 1925(b) s]tatement . . . are waived").

At trial, the Commonwealth presented the video footage recovered from three cameras in the area of the front doorway and stairway of [R.M.'s] home. As [Appellant] asserts, this video depicted [Appellant] entering the home approximately [30] seconds after co-defendants Wallace and Jeffries entered the building. However, the video also shows all three defendants approaching the home from the area of the same parked car, and all three defendants, one right after the other, running down the stairs from [R.M.'s] second floor apartment after the robbery. In [Appellant's] hand, as he flees, is the cookie tin that was stolen from [R.M.'s] apartment. The video also depicts all three defendants running at the same time back towards the parked car. Accordingly, contrary to [Appellant's] argument, the video was compelling evidence that [Appellant] was guilty of conspiring with Wallace and Jeffries, and failed to exculpate him in any manner.

Moreover, there was additional compelling evidence to support [Appellant's] conspiracy conviction. Cook, who spotted cash in [R.M.'s] car and enlisted [Appellant] to execute the robbery, described in vivid detail all of the events leading up to, during, and after the robbery, including the role of [Appellant] and his co-conspirators. Her testimony was substantially corroborated by the cell phone tower analysis of [Appellant's] cell phone, which demonstrated that Cook had accurately described the movements of the robbers as the events transpired.

As the video surveillance footage confirms that [Appellant] was involved in an conspiracy, and as the charge was amply supported by additional, corroborating evidence, the [trial c]ourt did not err in denying [Appellant's] motion for a new trial.

*Id.* at 8-9 (internal citations omitted).

We agree with the trial court's cogent analysis and conclude that the trial court did not abuse its discretion when it denied Appellant's weight of the evidence challenges. Therefore, Appellant's claims on appeal fail.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/12/2017