J-S41002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: K.B.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.B.R., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 693 MDA 2022 |

Appeal from the Dispositional Order Entered March 25, 2022
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-JV-0000201-2020

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS, P.J.E.[*]

DISSENTING MEMORANDUM BY LAZARUS, J.:   **FILED FEBRUARY 16, 2023**

I respectfully dissent.  In my opinion, the juvenile court analyzed the weight of the evidence issue under the incorrect standard of review. Accordingly, I would vacate and remand.

As the Majority notes, the juvenile court found the testimony of J.F., the complainant,  "entirely credible," despite "minor inconsistencies[.]"  Majority Memorandum, at 7, *citing* Juvenile Court Order and Opinion, 6/2/22, at 2. Further, the Majority correctly points out that this Court cannot reassess the juvenile court's credibility determinations.  I am troubled, however, by both the juvenile court's failure to acknowledge the objective evidence in its post-dispositional decision and its characterization of the inconsistencies as "minor."  It is clear from the post-disposition order, as well as from the Rule

_____

[*] Former Justice specially assigned to the Superior Court.

1925(a) opinion, that the juvenile court ignored objective evidence and incorrectly evaluated the evidence in the light most favorable to the Commonwealth, as verdict winner.

Appellant K.B.R. argues that J.F. consented to sexual contact, and that her testimony at the adjudicatory hearing was contradicted by "the objective evidence in the form of video footage and [her] own emails[,]" which, K.B.R. claims, established that J.F. "was a willing participant in the encounter." Appellant's Brief, at 18. K.B.R. maintains that after the sexual contact occurred, J.F. emailed him wanting to pursue a relationship, that he did not want to engage in a relationship with her and indicated such to her, and that this may have "given her a motive to accuse him in the first place." Appellant's Brief, at 23.

In reviewing a trial court's adjudication of a weight of the evidence claim, "an appellate court determines whether the trial court abused its discretion based upon review of the record; its role is not to consider the underlying question in the first instance." ***Commonwealth v. Blakeney***, 946 A.2d 645, 653 (Pa. 2008). Our Supreme Court has explained:

> **This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered**. In describing the limits of a trial court's discretion, we have explained:
>
> > The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed

- 2 -

to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted) (emphasis added).

K.B.R. argues that the objective evidence, J.F.'s three emails to K.B.R. and the middle school video footage, "painted a picture that was at odds with [the victim's] testimony." Appellant's Brief, at 21. I agree, and although the juvenile court is free to believe all, part, or none of the evidence, I do not believe it is free to ignore uncontradicted, objective evidence. This is not the typical weight of the evidence case where an appellate court is limited to a cold record, credibility determinations, and has no opportunity to observe the evidence as it was presented. For these reasons, I find it necessary to provide a more exhaustive explanation of the facts of record than that provided by the Majority or the juvenile court.

The incident between K.B.R. and J.F. occurred on February 4, 2020, in a bathroom at the middle school that the two minors attended. Both K.B.R. and J.F. were 13 years old at the time. K.B.R. is Black; J.F. is Caucasian, and she suffers from cerebral palsy, which affects her gait. J.F. does not, however, require assistance in walking or using the restroom.

K.B.R. and J.F. were both in an after-school activity, Raise Your Voice, a vocal ensemble that met once a week. On February 4, 2020, K.B.R. and

J.F. attended Raise Your Voice, and, as J.F. testified, they talked during the activity. N.T. Adjudicatory Hearing, 10/26/21, at 7. After the activity, the two walked to J.F.'s locker, and then back down the hallway. J.F. testified:

> A: He took my hand and he said, does this feel weird? I said, kind of, not really. And then he took my hand and placed it over his clothes, where his penis would have been. He said, is this weird? And I said, yes. And I was trying to push my hand away, and then he put his hand over my clothes, where my vagina would have been. And he said, does this feel weird? And I said, yes. And I was trying to push my hand away— push his hand away.

N.T. Adjudicatory Hearing, *supra* at 10-11. The video shows J.F. "continued walking and talking with [K.B.R.]" after he had put her hand near his crotch and then placed his hand near her. *Id.* at 10. J.F. continued her testimony as follows:

> A: I started walking down the hallway and he was there with me, trying to convince me to go to a bathroom with him. . . . He was like–he grabbed my hand and was kind of leading me or he would grab a part of my backpack and just gently guide me.
>
> Q: [A]t some point did you end up going into a bathroom?
>
> A: Yes.
>
> Q: And why did that happen?
>
> A: Because I did have to go to the bathroom because it was my usual routine at the end of chorus, at the end of Raise Your Voice. I usually always went.
>
> Q: And how were you feeling at this point before you went into the bathroom?
>
> A: I was feeling really nervous and scared.
>
> Q: Okay. And where was [K.B.R.] when you went into the bathroom?

A:      He was waiting outside for a little bit and then he came in. . . . I went in and I tried to shut the stall door but he was able to get in before I could close the door. . . .  He locked the door behind him.

Q:      Okay.  What was the very first thing that happened once you got into the stall?

A:      He locked the stall door and he pulled down his pants. . . . He was trying to pull my clothes down and I kept pulling them up. . . .

Q:      At some point did your clothes come down?

A:      Yes.

Q:      And then what happened, was a part of your body exposed?

A:      Yes. . . My butt. . . .

Q:      Was any part of the front of your body exposed?

A:      I don't remember.  I don't believe so.

Q:      Okay.  What was the very next thing that happened?

A:      He asked me if his penis was big.

Q:      Okay.  At some point did any part of his body touch yours?

A:      Yes.

Q:      What part of your body?

A:      His penis touched right above my butt. . . .  He was trying to put it inside my butt. . . .  It went in between my butt cheeks.

Q:      And when that happened, how did that feel?

A:      It hurt a bit. . . .  I was really nervous and scared.  I was just thinking to myself, maybe if I do what he wants maybe I'll be able to get away from this. . . .

Q:      **Did you at any point tell [K.B.R.] you did not want to do this?**

A:      **Yes.**

Q:      **Okay.  Was that when you were in the bathroom?**

A: **No.  It was when I was in the hallway**.

Q: **Okay.  In the hallway you told him to you did not want to go into the bathroom with him?**

A: **Yes.**

Q: Okay.  Did his penis touch any other part of your body?

A: Yes. . . . My vagina and my mouth. . . .  He was trying to put his penis in my vagina but he wasn't successful, so he went and tried to put in in my butt and eventually he put his penis in my mouth.

Q: Okay.  [Y]ou said he put it in your mouth.  How did that happen?

A: He took my shoulder and he just pressed me against the ground lightly, like he didn't shove me against the ground or anything, and then he pushed my head forward to put his penis in my mouth.

Q: [J.F.], did anything come out of his penis?

A: Yes. . . It was white. . . . He wiped it off on a piece of toilet paper and just flushed it down the toilet.

Q: Did any of that touch you anywhere?

A: No.

Q: Okay.  What's the next thing that happened?

A: I told him that we should stop because I didn't want to miss the bus.

Q: And at that point what happened?

A: **He just kept asking if we could do it for longer, and that's when I put my foot down and I said, no, I don't want to miss the bus.  I don't want to do this anymore.**

Q: **Okay.  And did you–did he stop at that point?**

A: **Yes.**

*Id.* at 11-20 (emphasis added). When asked if she told him she "didn't want to be touched like that[,]" J.F. responded, "No. . . . I didn't tell him directly. I believe, like, I told him indirectly, like, trying to pull my pants back up or being very hesitant, but I did not want to be touched like that." *Id.* at 22.

J.F. also testified that she recalled that, during the Raise Your Voice activity, K.B.R. "said something about putting his penis in her in some way, shape or form," and that in the Children's Advocacy Center (CAC) interview after the incident she stated that no one else heard K.B.R. say that. *Id.* at 28. When defense counsel asked, "do you also remember saying in response to his, I'm going to put my penis in your body of some sort, you said, okay," J.F. responded, "Yes, but **I did not hear the question**." *Id.* at 28-29 (emphasis added). Additionally, and inexplicably, J.F. acknowledged that she told the CAC interviewer that **she had told some friends what K.B.R. had said to her during Raise Your Voice**, and that her friends advised her not to go the bathroom. *Id.* at 33-34. Despite this, the video shows J.F. walking and talking with K.B.R. through the hallway, passing by several teachers and janitors, and going into a bathroom with him, coming out of the bathroom, observing an adult walk by, and going back into the bathroom. Specifically, the video shows that while K.B.R. and J.F. were in the hallway, K.B.R. appears to move J.F.'s hand toward his crotch and then place his hand on or near J.F.'s crotch. *See* N.T. Adjudicatory Hearing, *supra* at 55-56; Cmwlth. Ex. 2 at 4:06:24-4:06:30. The video shows K.B.R. and J.F. continue walking in the hallways, stopping occasionally to talk with a teacher or teacher's aide,

appearing to go into a bathroom but stopping when a student runs down the hall, and, ultimately, going into a bathroom. Cmwlth. Ex. 2, at 4:06:30-4:12:34. What is not visible on the video is the vestibule area, which separates into a boys' restroom and a girls' restroom. However, after K.B.R. and J.F. enter the vestibule area of the bathroom, J.F. comes out alone for a moment; an adult walks by and, without interacting with the adult, J.F. walks back into the vestibule. Cmwlth. Ex. 2, at 4:12:25-4:12:38.

At no time, either before or after the time the two are in the bathroom and out of view of the video camera, does J.F. appear upset or frightened. At no time does she seek the intervention of any teacher, janitor, or student that passes them in the hallway.

The trial court denied K.B.R.'s post-dispositional motion, opining:

The [c]ourt had the opportunity to observe the testimony of [J.F.]. The [c]ourt finds that [J.F.] related the events at issue in a clear and articulate manner. The [c]ourt finds that while there may have been minor inconsistencies in her testimony with regard[] to an event that took place over a year and a half ago, those inconsistencies did not change the critical facts of her testimony. . . . [J.F.] indicated verbally outside of the bathroom that she was not ready for sexual activity. This was the sole verbal indication to [K.B.R.] that [she] was not interested in having sexual activity on the date and time in question. [J.F.] went into the girls' bathroom while [K.B.R.] was outside the bathroom. . . . The [c]ourt finds [J.F.'s] testimony credible that [K.B.R.] forced his way into the stall and locked the stall. The [c]ourt finds that this is the first act of compulsion. After [K.B.R.] had pulled down his pants and exposed his penis, he then pulled down the clothing of [J.F., who] then tried to repeatedly pull her clothing up. [K.B.R.] then pulled her clothing down. This again is an act of compulsion. The testimony from [J.F.] is that she has cerebral palsy. As a result, it is clear from the video that she is considerably smaller and weaker than [K.B.R.]. [K.B.R.] then ran from the bathroom

- 8 -

immediately after the incident. [K.B.R.] later e-mailed [J.F.] to indicate to [J.F.] that she should not tell anybody about the incident in question. . . . As stated above, the [c]ourt finds [J.F.''s] testimony to be entirely credible.

Order Denying Post-Dispositional Motion, 4/6/22, at 1-2; Pa.R.A.P. 1925(a) Opinion, 6/2/22, at 2-3. The objective evidence, however, belies J.F.'s testimony. As stated above, both the post-disposition order and the Rule 1925(a) opinion indicate the court ignored this evidence and evaluated the evidence in the light most favorable to the Commonwealth, as verdict winner. However, in a weight of the evidence claim, neither this Court, nor the trial court, is obligated to view the evidence in this light. *See Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009), citing *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "Significantly, in a challenge to the weight of the evidence, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon **a review of the record**, rather than to consider, *de novo*, the underlying question of the weight of the evidence." *Rivera*, 983 A.2d at 1225. *See also Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa. Super. 2005) (in weight claim, trial court under no obligation to review evidence in light most favorable to verdict winner); *Clay*, *supra*.

Although the juvenile court correctly notes in both its order and opinion that K.B.R. ran out of the bathroom and emailed J.F. not to tell anybody, the court ignores the fact that J.F. acknowledged that both she and K.B.R. were rushing out of the bathroom so as not to miss their buses, and, importantly,

the court ignores the fact that it was J.F. who initiated the email exchanges. J.F. emailed K.B.R. shortly after the incident, stating simply, "Hey," and, when she received no response, again emailed "Hey," about an hour later. It was only then that K.B.R. emailed J.R. not to tell anybody, to which J.F. responded, the next morning, "Ok." *See* Cmwlth. Ex. 1.

Remarkably, the juvenile court's order and opinion also ignore J.F.'s testimony acknowledging that she told the CAC interviewer that she sent the emails because she "wanted to see if [K.B.R.] was just in it for the sex[.]" N.T. Adjudicatory Hearing, *supra* at 31. Additionally, the court's order and opinion also ignore J.F.'s testimony that she recalled telling the CAC interviewer that the reaction she got from K.B.R. via email was "not the reaction that [she] expected[.]" *Id.* at 31-34. Finally, the court's order and opinion ignore J.F.'s statement to the CAC interviewer that after K.B.R. made those comments to her during the Raise Your Voice activity, J.F. had spoken about it to some friends, who advised her not to go to the bathroom with K.B.R. *Id.* at 33-34.

In summary, I am not convinced that these inconsistencies can be characterized as minor, and, more importantly, it is concerning to me that the juvenile court appears to have ignored objective evidence of record and reviewed K.B.R.'s weight of the evidence claim under the standard applicable to sufficiency of the evidence claims. Clearly, this Court cannot substitute its judgment for that of the finder of fact, as that would require an assessment of a court's subjective assessment of credibility. However, the objective

evidence of record cannot simply be disregarded or wholly rejected, particularly where that evidence appears irreconcilable with the complainant's testimony and where that testimony itself is internally inconsistent.[1]  In my view, the interests of justice require that the juvenile court, at the very least, acknowledge and reconcile the evidence presented.

For these reasons, I would vacate the order denying K.B.R.'s post-dispositional motion and remand this case for the juvenile court's review of the evidence, including all of the objective evidence, in light of the proper standard.

_____

[1] I acknowledge that even if the objective evidence shows that J.F. agreed to go into the bathroom area with K.B.R., that does not mean she consented to any sexual activity.  However, the objective evidence, both before and after the incident, cannot be disregarded by the trial court in its evaluation of J.F.'s credibility, and in its determination of the motion for post-disposition relief and its Rule 1925(a) opinion.